Landy *v.* Rosenstein et al., Appellants.

Argued November 24, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

210

*George H. Detweiler,* for appellants.

*Langdon W. Harris, Jr.,* of *Herman & Harris,* with him *Albert T. Bauerle,* for appellee.

OPINION BY MR. JUSTICE BARNES, January 11, 1937:

This suit is brought by a husband to recover damages for the death of his wife in an automobile accident. He obtained a verdict and judgment in the court below, from which defendants appeal.

The plaintiff, Thomas Landy, and his wife were guest passengers at the time of the accident, in an automobile belonging to Edward J. Crane, a resident of North Carolina, who with his wife had driven from the South, and was visiting plaintiff at his home in Philadelphia. The accident occurred at the intersection of Third and Vine Streets, in Philadelphia, at an early hour of the morning of May 21, 1932, while it was yet dark. During the preceding evening, a party consisting of Crane, his wife and sister, together with plaintiff and his wife, had driven in Crane's automobile to Camden, where they had dinner in a restaurant. According to the evidence, each member of the party, during the evening, had also taken "about three glasses of beer apiece." The automobile which Crane was driving was of the type known as a convertible coupé, with a rumble seat.

On the return trip to Philadelphia Crane was driving, his sister was beside him, while Mrs. Landy, wife of plaintiff, who was fatally injured in the accident, was next to the sister, on the extreme right of the front seat. In the rumble seat of the car plaintiff sat behind his wife, while beside him in the rear of the driver, was Mrs. Crane. The car proceeded over the Delaware River Bridge, and in an effort to reach Delaware Avenue, Crane drove for several blocks east on Vine Street, against traffic, as Vine Street at this point is a one-way street for westbound traffic, and was so marked by signs at each street intersection.

As the car traveling east on Vine Street approached the intersection of Third Street, at a speed of approximately twenty-five miles per hour, Crane sounded his horn and looked south on Third Street, but because of the darkness, could see only about twenty-five feet below the corner. He said in his testimony there was no automobile in sight. When midway across the intersection, his car was suddenly struck in the centre of the right side by defendants' truck which was coming north on Third Street. Several witnesses for plaintiff testified that there were no lights on the truck, and that the horn was not sounded at the intersection. The truck was carrying thirteen thousand pounds of produce, and was traveling at the time of the accident at a speed around twenty-five miles an hour. So great was the force of the impact that the left front of defendants' truck, and the right centre and side of the Crane car were demolished. The weather conditions at the time were clear, and the corner of Third and Vine Streets was well lighted.

On behalf of defendants there was testimony that the driver of the truck, upon nearing Vine Street, looked to his right, the direction from which traffic would be expected to come, but before he could turn to look in the opposite direction, the coupé collided with his truck. Their witnesses said that just prior to the accident, the coupé was being driven down Vine Street, against traffic,

at a speed of forty-five miles per hour. It was denied by defendants that the truck was without lights.

Defendants' negligence was admitted at bar, and the only question is whether the plaintiff, as a guest passenger in the Crane car was guilty of contributory negligence. Defendants contend that plaintiff failed in his duty of care and cannot recover because he did not remonstrate with the driver for proceeding in the wrong direction on a one-way street; and because he did not object when the driver approached and entered upon a street intersection at the speed he was driving when the accident occurred.

In order to determine here whether plaintiff was guilty of contributory negligence, we must first decide whether as a guest passenger he had any control of the vehicle at the time of the accident, and whether his failure to act in some way to avoid the accident convicts him of negligence.

It is apparent from the evidence that plaintiff's status in the car in which he and his wife were riding was clearly that of an invited guest. He had no actual control of the car or share in its operation. From his position in the rumble seat his opportunity to observe the street, its traffic conditions, and its one-way markings, was inferior to that of the driver of the car. To require a guest to take part in driving an automobile from a rear seat position would destroy the efficiency of the driver. Constant interference with the driver would increase rather than diminish the danger of accident. Moreover, from the testimony it affirmatively appears that plaintiff was not familiar with the operation of an automobile, not having learned to drive one. As we said, referring to the duties of a guest passenger, in *Becker v. Saylor*, 317 Pa. 573, 575: "He was on the back seat and unless the circumstances were most unusual was not required to advise the driver how to operate his car. 'In general, a passenger will not be held guilty of negligence, as a matter of law, for failing to discover

perils or to interfere with the driver and this is especially true of one sitting in the back seat *(Ferrell v. Solski,* 278 Pa. 565), where silence with regard to the driving is generally golden': *Schlossstein v. Bernstein,* 293 Pa. 245, 250."

It is argued by defendants that the parties in the automobile were engaged in a common undertaking, and therefore plaintiff must share the responsibility for the accident. We cannot agree with that interpretation of the facts.

This is not a case where the operation of the vehicle was such that the negligence of the driver of the car may be imputed to the passenger. As Mr. Justice MAXEY points out in *Rodgers v. Saxton,* 305 Pa. 479, 488: "The negligence of the driver of a vehicle can be imputed to a passenger therein only when the evidence justifies a finding of the passenger's right to a share in the control of that vehicle at the time of the negligence." In the present case there is no evidence whatsoever that would justify the conclusion that plaintiff had any right to a "voice in the control, management or direction of the vehicle": *Johnson v. Hetrick,* 300 Pa. 225, 231. Hence negligence here cannot be imputed to plaintiff.

From the evidence before us our conclusion is that the position of plaintiff was merely that of a guest passenger in the car, having no part in its control, and, in the absence of known dangers, having no concern with its operation: *Simrell v. Eschenbach,* 303 Pa. 156; *Cormican v. Menke,* 306 Pa. 156; *Matthews v. B. & O. R. R. Co.,* 308 Pa. 238; and cases therein cited. Moreover, there is no evidence that plaintiff had any knowledge that the driver was proceeding against traffic on a one-way street.

Defendants' second point is equally without merit. They urge that plaintiff was contributorily negligent because of inaction at the time of the accident. They contend that he should have remonstrated with the driver, and objected to the manner in which he was driving the

car. It is true that an invited guest is not wholly without responsibilty as an occupant of a car. Where there are dangers reasonably manifest and known to the guest, and he has an opportunity to influence the situation for safety, if he sits by without warning the driver, and permits himself to be driven carelessly to his injury, or if he joins with the driver in testing danger, this is negligence which will bar recovery by him: *Hardie v. Barrett,* 257 Pa. 42; *Minnich v. Easton Trans. Co.,* 267 Pa. 200; *Davis v. American Ice Co.,* 285 Pa. 177.

The defendants contend that inaction per se is sufficient to charge a guest passenger with negligence. None of our cases has gone that far; on the contrary, we said in *Cormican v. Menke,* supra, (p. 163): "The tendency of our decisions is to hold a passenger responsible for his actual negligence in joining with the driver in testing a danger he knows exists, and not for the result of *mere inaction* in failing to discover dangers of which he is ignorant, but might have discovered had he been giving attention to the roadway ahead of him." We have decided that a guest is *not bound to act* except in case of a danger actually known to him, or so obvious that he is presumed to know it, and not then if the driver is aware of the same and striving to avoid it: *Kilpatrick v. Phila. Rapid Trans. Co.,* 290 Pa. 288, 296. See also *Minnich v. Easton Transit Co.,* supra; *Schlossstein v. Bernstein,* supra.

In the *Kilpatrick* case, supra, (p. 298), the present Chief Justice said: "The weight of all the authorities seems to be that the guest is responsible for inaction only when he knows of a danger, or where the evidence is such that, from the nature of the situation itself, it appears that he must have realized its peril. He is not required constantly to look out for danger."

In applying the rule stated to cases of inaction on the part of the guest passenger, we held in the *Kilpatrick case,* supra, a guest passenger reading a newspaper at the time of the accident not guilty of contributory negli-

gence; and in *Simrell v. Eschenbach,* supra, we said (p. 162) : "As she [the guest passenger] took no part in the driving and knew of no danger, the fact that she was dozing when the crash came did not necessarily convict her of negligence." Finally, in *Frank v. Markley,* 315 Pa. 257 (p. 259) we stated the rule in these words: "It must now be regarded as settled that the mere fact of sleeping does not, as a matter of law, convict a guest in an automobile of negligence." In *Oestreich v. Zibman,* 110 Pa. Superior Ct. 457, 459, with respect to plaintiff, a guest passenger, the Superior Court said ". . . Oestreich was dozing at the time [of the accident] in the back seat; . . . Oestreich was not required to keep awake and alert and on the watch for the driver's negligence."

The cases mentioned express the common sense view that two persons cannot operate an automobile at one time. Ordinarily a guest's attention is not fixed on the street, the roadway, or the intersections thereof. His mind is not occupied with the driving of the machine. He may be engaged in conversation with those about him, or in observing the country, or passing objects: *Kilpatrick v. Phila. Rapid Trans. Co.,* supra. Hence it follows that a guest is not bound to be equally alert with, and held to the same degree of care, as the driver of the car. See *Azinger v. P. R. R. Co.,* 262 Pa. 242; *Alio v. P. R. R. Co.,* 312 Pa. 453; *Fingeret v. Mann,* 319 Pa. 262.

Upon the same principle, a guest passenger is not obliged to be continually on watch at street and road intersections for indications of peril. That necessarily is the duty of the driver of the car. In *Davis v. American Ice Co.,* supra, (p. 185) we said: "We know of no decision where it has been held that a passenger in an automobile is equally bound with the driver, . . . to watch for the approach of vehicular traffic at street crossings." See also *Richards v. Phila. Rapid Trans. Co.,* 299 Pa. 163.

Here it cannot be said as a matter of law that the danger which arose from the operation of the car was manifest to plaintiff, or that he had any opportunity to influence the situation for safety. He had no time to protest to the driver; no opportunity from his position in the rumble seat to know of threatened danger, or to give warning: *Becker v. Saylor*, supra. When the learned trial judge submitted to the jury the question of plaintiff's contributory negligence under the evidence presented, he gave the defendants all they could reasonably ask: *Nutt v. Penna. Railroad Co.*, 281 Pa. 372; *Kilpatrick v. Penna. Railroad Co.*, supra; *Cormican v. Menke*, supra.

The defendants assert that plaintiff was guilty of negligence for the further reason that he entrusted the safety of his wife and himself to a driver who had been drinking during the course of the evening preceding the accident. There is no evidence to show that Crane, the driver, was intoxicated at this time. On the contrary, defendants' own proofs established the fact that Crane was examined by a police doctor at the station house and pronounced sober. The admitted fact that Crane had drunk three glasses of beer some time before the party started to return to Philadelphia, does not prove that he was unfit to drive the car, either at the time he started on the return trip, or at the time of the accident.

Judgment is affirmed.